# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| THOMAS V. AMARO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case number 4:05cv1456 ERW |
| ) | TCM |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Jo Anne B. Barnhart, the Commissioner of Social Security ("Commissioner"), denying the request of Thomas V. Amaro ("Plaintiff') for a waiver of an overpayment of $1,940.50 in disability insurance benefits ("DIB") awarded under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433. Plaintiff has filed a brief in support of his complaint; the Commissioner has filed a brief in support of her answer. The case was referred to the undersigned United States Magistrate Judge for a review and recommended disposition pursuant to 28 U.S.C. § 636(b).

## **Background**

Plaintiff was found to be disabled as of February 1, 1987, and entitled to DIB as of that date. (R. at 12.)[1] In November 1999, Plaintiff filed a Work Activity Report, disclosing that

---

[1] References to "R." are to the administrative record filed by the Commissioner with her answer.

he would begin work in five days as a flight attendant for Trans World Airlines and would be working an average of 18 days each month at a starting hourly salary of $17.54.  (Id. at 15-17.)

On March 2, 2000, the Social Security Administration ("SSA") issued Plaintiff a Notice of Proposed Decision, informing him that "it appears we will decide that your disability ended because of substantial work and that you are not entitled to payments beginning February 2000."  (Id. at 19.)  Plaintiff was asked to review information the SSA was basing its decision on, specifically, information that he had started work in November 1999 as a flight attendant for Trans World Airlines.  (Id.) He was further informed that, based on that information, "it appears we will decide your disability ended because of substantial work as of November 1999."  (Id.)  The Notice proceeded to explain that "[g]oing to work does not affect payments right away."  (Id. at 20.)  Considerations of a 9-month trial work period and a following, 36-month extended period of eligibility affect payments, in addition to the requirement that the work during those periods must be "substantial" to qualify.  (Id.)  He might continue to be eligible for Medicare for 39 months after his trial work period ended.  (Id.)

The next month, Plaintiff received another letter, dated April 16, 2000.  (Id. at 23-29.)  This letter first reminded him of the earlier letter and then informed him that, "We are now writing to tell you of our decision."  (Id. at 23.)  The decision was that his period of disability ended and he was not entitled to DIB beginning April 2000.  (Id.)  The letter further informed Plaintiff that his trial work period had ended September 1995 and that the SSA paid benefits for the month disability ended and for the following two months.  (Id.)  In Plaintiff's case, this

was November 1999 through January 2000. (Id.) His extended period of eligibility ended September 1998. (Id. at 24.) He was no longer eligible for DIB as of February 2000. (Id.) And, because the SSA did not stop his checks on time, he was overpaid $4,941.50 and should refund that amount within 30 days. (Id. at 25.) If Plaintiff could not refund that amount, he should submit a partial payment, an explanation of his finances, and a plan for repaying the balance. (Id.) If, on the other hand, Plaintiff thought the overpayment was wrong, he could request that the determination be reconsidered or request a waiver of the overpayment. (Id.) To be granted a waiver, the overpayment must not have been his fault. (Id.) In the same letter, Plaintiff was informed that his hospital insurance coverage would end as of January 2002. (Id. at 27.)

Plaintiff promptly requested reconsideration, explaining that the April 16 letter had said his disability would end April 2000 and his benefits would end two months later, but also referred to his benefits having ended in September 1999. (Id. at 42.) He had been told at the SSA office and by telephone that his benefits would stop in April. (Id.)

Four months later, on August 22, Plaintiff requested a waiver. (Id. at 34-41.) He explained that he had been told his benefits would stop in May 2000, and he listed his assets, income, and expenses. (Id. at 36-40.)

By letter dated September 27, 2001, the SSA informed Plaintiff that their earlier decision was unchanged after reconsideration and he would be notified later about the overpayment due. (Id. at 49-50, 52.) This letter was accompanied by a notice which reads as follows:

> This letter of reconstruction [sic] is a result of our careful review of your claim. The notice dated April 16, 2000 has a typographical error. It shows you are not entitled to Social Security Disability benefits beginning April 2000.
>
> As this reconsideration letter provides you are not entitled to Social Security Disability benefits beginning February 2000.
>
> We regret any inconvenience the letter of April 16, 2000 may have caused you.
>
> You will be notified later of the correct underpayment or overpayment as a result of this reconsideration.

(Id. at 53.) A case summary issued the same day lists July 31, 2006, as the date when Plaintiff's eligibility for Medicare ended. (Id. at 54.)

Plaintiff was later notified of the overpayment due – $1,986.00. (Id. at 66.) After a personal conference with an SSA employee, see 20 C.F.R. § 404.506 (outlining process for contesting overpayment and requesting waiver), his request for a waiver was denied. (Id. at 62-64.) He was found to be a fault in causing the overpayment by receiving and cashing two checks that were not due him. (Id.)

Plaintiff then requested an administrative hearing. (Id. at 68.) Consequently, in March 2004, a hearing was held before Administrative Law Judge ("ALJ") James E. Seiler. (Id. at 96-112.)

Plaintiff, represented by counsel, testified that he had already received payments for February and March 2000 by the time he received SSA's March letter informing him that he was not entitled to benefits beginning in February 2000. (Id. at 102.) The February payment was for the January benefits; the March payment was for the February benefits. (Id. at 102-03.) When he received the March letter, he went to the SSA office. (Id. at 103.) A gentleman

there checked the computer and then told Plaintiff that his payments were to stop in April. (Id. at 103.) If he received a check then, he was to return it. (Id.) No check was received after March. (Id.) Plaintiff next received an April letter stating that his benefits would end that month. (Id. at 104.)

The next communication Plaintiff had from SSA was six to eight months later and was about an overpayment. (Id.) Plaintiff then testified about his assets, income, and expenses. (Id. at 104-08.)

A report generated prior to the hearing listed the overpayment due as $1,940.50. (Id. at 78.)

Two months after the hearing, the ALJ entered a decision finding that Plaintiff was not without fault as to the overpayment. (Id. at 14.) Specifically, the ALJ found that Plaintiff had "accepted payment which he knew or should have been expected to know was incorrect." (Id. at 13.) Plaintiff had received notice in early March 2000 that he was not entitled to DIB effective February 2000. (Id.) Consequently, he should have known that he was not entitled to the DIB he received in April. (Id.) Moreover, he received the notice at least soon after he received DIB in March and yet failed to return any of those benefits. (Id.)

The ALJ further found that:

[Plaintiff's] assertion that the [SSA] informed him that his entitlement would stop in May 2000 is not unfounded. In a notice sent to [Plaintiff] on April 16, 2000, the [SSA] erroneously informed [Plaintiff] that his entitlement would stop in April 2000. However, this matter provides [Plaintiff] no practical support because he received the erroneous notice after he received the overpayment. That is, he received the erroneous notice in mid-April 2000, and received the undue benefits in early April 2000 and early March 2000.

(Id.)

Because the ALJ determined that Plaintiff was not without fault, he did not reach the question whether recovery of the overpayment would defeat the purpose of Title II or be against equity and good conscience. (Id. at 14.)

The Appeals Council denied Plaintiff's request for review, effectively adopting the ALJ's decision as the final decision of the Commissioner. (Id. at 2-5.)

## Discussion

The ALJ's decision is conclusive upon this Court if it is supported by "substantial evidence on the record as a whole." **Gladden v. Apfel**, 139 F.3d 1219, 1222 (8th Cir. 1998); **Clark v. Apfel**, 141 F.3d 1253, 1255 (8th Cir. 1998). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the decision." **Strongson v. Barnhart**, 361 F.3d 1066, 1069-70 (8th Cir. 2004) (interim quotations omitted). When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the court must also take into account whatever in the record fairly detracts from that decision. **Warburton v. Apfel**, 188 F.3d 1047, 1050 (8th Cir. 1999); **Gladden**, 139 F.3d at 1222. The court may not reverse that decision merely substantial evidence would also support an opposite conclusion, **Dunahoo v. Apfel**, 241 F.3d 1033, 1037 (8th Cir. 2001), or it "might have decided the case differently." **Strongson**, 361 F.3d at 1070. Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [court] must

affirm the agency's decision." **Wheeler v. Apfel**, 244 F.3d 891, 894-95 (8th Cir. 2000) (alteration added).

The issue then is whether the ALJ's decision that Plaintiff was not without fault in receiving the overpayments is supported by substantial evidence on the record as a whole. For the reasons set forth below, the undersigned finds it is not.

Title 42 U.S.C. § 404 requires the Commissioner to recover an overpayment of Social Security benefits unless the beneficiary is "without fault" and the recovery "would defeat the purposes of [Title II] or would be against equity and good conscience." 42 U.S.C. § 404(b) (alteration added). "'Fault' as used in 'without fault' . . . applies only to the individual. Although the [SSA] may have been at fault in making the overpayment, that fact does not relieve the overpaid individual . . . from liability for repayment if such individual is not without fault. In determining whether an individual is at fault, the [SSA] will consider all pertinent circumstances . . ." 20 C.F.R. § 404.507 (alterations added). An individual is with fault if the overpayment resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) . . . [A]cceptance of a payment which he either knew or could have been expected to know was incorrect.

**Id.** (alterations added).

"The regulations also state:

> A benefit payment . . . to . . . an individual who fails to meet one or more requirements for entitlement to such payment . . . constitutes an entitlement overpayment. Where an individual accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto . . . such individual, in accepting such overpayment, will be deemed to be without fault."

**Gladden**, 139 F.3d at 1223 (quoting 20 C.F.R. § 404.510a) (alterations in original). "[S]omeone who relies on erroneous information from an official source meets both requirements for waiver set forth in 42 U.S.C. § 404(b): he or she is without fault, *and* recovery would be against equity and good conscience." **Id.** (alteration added).

As in the instant case, the issue in **Gladden** was not whether the beneficiary had been overpaid. **Id.** at 1222 (noting that the substantive issue of disability or substantial gainful activity was not the question that needed to be answered). As in the instant case, the issue was whether the Commissioner should waive her right to have the admittedly erroneous overpayment repaid. **Id.** The beneficiary argued that the overpayment should be waived because the ALJ who had found him disabled had told him that the SSA did not consider work to be anything less than eight hours a day, forty hours a week; consequently, his income from a business he owned was not substantial gainful activity because the time he spent at the business was spent socializing and did not satisfy the criteria outlined by the ALJ. **Id.** at 1222-23. Noting that the beneficiary had been forthright about his role at the business from the beginning, the court concluded that the beneficiary was without fault, "as that term is defined by the applicable statute and regulations," because he had relied on the information from the ALJ. **Id.** at 1220, 1223.

Similarly, Plaintiff has been forthright about his returning to work. The ALJ found that he was not without fault, however, because the March 2000 letter informed him his DIB benefits would end in February and the April date in the second letter was a typographical error. The ALJ reasoned that, therefore, Plaintiff should have been aware that his payments for February and March were overpayments.

The ALJ overlooks several important considerations. The March letter spoke of possibilities, i.e., "it *appears* we *will* decide" that Plaintiff's entitlement to disability payments ended in February 2000; listed November 1999 as the month when his disability apparently ended; referred to a trial work period, an extended period of eligibility, and a continuing period of eligibility for Medicare; and explained that "[g]oing to work does not affect payments right away." Plaintiff consulted a representative at the SSA office and was informed that his payments were to stop in April. The next communication Plaintiff received was a letter in April telling him that he was then being informed of the SSA's decision. This letter listed specific dates when his trial work period and his extended period of eligibility each ended and the date, February 2000, when he was no longer eligible for disability payments. The letter also informed Plaintiff that he was not entitled to DIB beginning in April 2000 and he owed SSA $4,941.50. Thus, Plaintiff received first a letter telling him that it *appeared* that SSA would decide his entitlement to DIB ended in February 2000 and referring to three other termination dates, i.e., the trial work period, the extended period of eligibility, and the end of Medicare eligibility. This letter clearly spoke in tentative terms of what the SSA's decision would be. The next letter, however, spoke in definitive terms of what the SSA's decision was

– it was that Plaintiff was no longer eligible for DIB beginning in February 2000 and his payments would end in April. Somehow, the claimed overpayments equaled $4,941.50, although the letter was dated April 16 and Plaintiff was receiving less than $1,000 in monthly benefits. In short, Plaintiff received two letters mentioning February 2000; the earlier letter listed that month as when Plaintiff's entitlement to payments ended and the later letter listed that month as when his eligibility for payments ended. This later letter also sought an overpayment greater than four months' DIB payments.

The ALJ discounted the role the second letter played by characterizing the April 2000 date as a typographical error. This characterization overlooks the tentative phraseology employed in the first letter and its implied promise of a firm decision to follow. The ALJ also found Plaintiff at fault because he had received two months' overpayments before receiving the April letter and had not returned either. After receiving the March letter, Plaintiff had, however, according to his uncontradicted testimony, consulted the SSA and had been informed that his payments would end in April 2000. The second letter confirmed this misinformation. Thus, there is no support for the ALJ's decision that Plaintiff had accepted a payment which he knew to be incorrect based on the March letter.

In **Gladden**, 139 F.3d at 1223, the court found that the beneficiary "might be determined to be at fault for accepting overpayment from such a date [when his circumstances changed] forward if the evidence shows he should have recognized that his changed circumstances warranted notice to Social Security, or at least an inquiry about any effect of that change on his eligibility." (Alteration added.) Plaintiff did notify the SSA of his changed

circumstances. On receipt of the March letter, Plaintiff did inquire of the SSA about when his benefit payments would end. Cf. **Kiefer v. Apfel**, 2000 WL 1335306, *1 (8th Cir. 2000) (unpublished per curiam) (affirming ALJ's decision not to waive overpayments to beneficiary who had failed to inform the SSA that he was incarcerated, a condition which barred the receipt of benefits).

As noted above, "someone who relies on erroneous information from an official source meets both requirements for waiver set forth in 42 U.S.C. § 404(b): he or she is without fault, *and* recovery would be against equity and good conscience." **Id.** Therefore, the factors supporting the conclusion that Plaintiff was without fault also require a conclusion that recovery would be against equity and good conscience. See **Id.** (assuming that recovery would be against equity and good conscience because beneficiary relied on erroneous information from ALJ). Cf. **Coulston v. Apfel**, 224 F.3d 897, 900-01 (8th Cir. 2000) (per curiam) (reaching question of whether repayment would be against equity and good conscience in case in which there was no allegation that beneficiary had inquired of Social Security or had relied on answer to any inquiry).

**Conclusion**

For the foregoing reasons, the undersigned finds that the decision of the Commissioner should be reversed and that the Commissioner should be directed to waive recoupment of the two months' overpayment erroneously made to Plaintiff.  See **Andler v. Chater**, 100 F.3d 1389, 1394 (8th Cir. 1996) (holding that a reviewing court may reverse the Commissioner's decision and award benefits where an award of benefits would clearly have been granted but for the ALJ's adverse decision unsupported by substantial evidence on the record as a whole). Accordingly,

**IT IS HEREBY RECOMMENDED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be REVERSED and that judgment be entered in favor of Plaintiff directing the Commissioner to waive recoupment of the two months' overpayment to Plaintiff.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact.  See **Griffini v. Mitchell**, 31 F.3d 690, 692 (8th Cir. 1994).

    /s/ Thomas C. Mummert, III
    THOMAS C. MUMMERT, III
    UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of June, 2006.